IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


UNITED STATES OF AMERICA

v.     CASE NO. 5:14cr28-RH

ANASTACIO MENDOZA,

    Defendant.

_____/


## ORDER DENYING THE MOTION TO SUPPRESS

This is a methamphetamine-conspiracy case. The defendant Anastacio Mendoza moved to suppress evidence seized from a car in which he was a passenger. After an evidentiary hearing, the district judge who was presiding over the case at that time announced his ruling: the motion to suppress was denied. Before a written order could be entered, the case was reassigned to me. I have read the motion, response, and entire transcript of the hearing (including the evidence and arguments). I have considered the issues de novo. Both sides expressly agreed on the record of the status conference on June 29, 2015, that the motion should be resolved following this procedure, without a new evidentiary hearing or further oral argument.

The original judge had it right.  This order denies the motion to suppress. The order briefly sets out my findings of fact and conclusions of law.

I

Law enforcement officers in Bay County, Florida, arrested an individual with a loaded gun in his pocket and a substantial quantity of methamphetamine in his car.  The individual cooperated, saying he obtained the methamphetamine from a source in Mexico, who had it delivered by others to the individual in Atlanta.  At the officers' direction, the individual arranged to obtain another shipment.  The individual began communications toward that end, but officers took over the communications, sending and receiving texts over the individual's phone.

The plan, as set up through the exchange of texts, was for methamphetamine to be delivered to a specific motel in Dothan, Alabama.  The officers did not know the identity of any courier (texts had referred to one or two couriers, at least one a "guy," and to his or their nationality as "Mexican") and did not know what kind of vehicle would be used.  As it turned out, two individuals went to Dothan; this order refers to them as couriers, plural.

Before the couriers arrived, the officers were able to track the couriers' progress.  This was possible because the couriers' GPS was not functioning; the officers guided the couriers to the motel through texts.  The couriers sent a text when they first saw the motel, so the officers knew their arrival was imminent.

Case No.   5:14cr28-RH

The officers sent a text telling the couriers to go around the motel to the right and to go to room 138. Exactly on schedule, a car entered the motel property, went around to the right, and pulled into the nearest available parking space to room 138. (The space directly in from of room 138 was already occupied by an unrelated vehicle; the newly arriving car parked next to that vehicle.) The arriving car had two occupants: a female driver and Mr. Mendoza, both believed by officers to appear Hispanic. The car had license plates from Fulton County, Georgia—a county that includes parts of Atlanta.

The officers approached the car and in short order detained the occupants, placing them in handcuffs. The occupants refused to consent to a search of the car. A drug dog already on the scene was walked around the car and alerted. A search turned up roughly five kilograms of crystal methamphetamine.

## II

When they approached the car, officers had, at least, reasonable suspicion that criminal activity was afoot. *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1 (1968). The officers were entitled to stop the occupants, to attempt to talk with them, to require them to get out of the car, and to pat them down for officer safety. *See, e.g.*, *Maryland v. Wilson*, 519 U.S. 408, 410 (1997) (holding that officers may order all passengers out of a vehicle as a matter of course during a stop); *United States v. Durrah*, 384 F. App'x 970, 972 (11th Cir. 2010). That another member of the

same methamphetamine conspiracy the officers were investigating had recently been arrested with a loaded gun in his pocket made a pat down especially prudent. And handcuffing the occupants also was permissible. *See, e.g.*, *United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989) (holding that handcuffing an individual during a *Terry* stop was permissible because officers reasonably believed the individual presented a potential threat to the officers' safety).

Moreover, what matters here is not whether it was permissible to pat down or handcuff the occupants, but only whether it was permissible to stop them. It plainly was. Walking the drug dog around the car did not prolong the proper *Terry* stop. When the dog alerted, the officers had probable cause to search the car. *See, e.g.*, *United States v. Trejo*, 551 F. App'x 565, 568 (11th Cir. 2014) ("This Court has long recognized that probable cause arises when a drug-trained canine alerts to drugs." (internal citations and quotations omitted)). So even if the officers did not have probable cause when the car first pulled in—not an obvious proposition—the officers had probable cause before they conducted the search. When, as here, officers have probable cause to believe evidence of a crime is located in a car, the officers may search the car without a warrant. *See, e.g.*, *United States v. Ross*, 456 U.S. 798, 809 (1982). The search was proper.

III

For these reasons,

IT IS ORDERED:

The motion to suppress, ECF No. 204, is denied.

SO ORDERED on August 18, 2015.

s/Robert L. Hinkle  
United States District Judge