IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

UNITED STATES OF AMERICA

vs.                                     Case Nos.:  5:14cr28/RH/EMT
                                                    5:17cv285/RH/EMT

ANASTACIO MENDOZA

---

## REPORT AND RECOMMENDATION

This matter is before the court upon Defendant Anastacio Mendoza's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 299), the Government's response in opposition (ECF No. 304), and Mendoza's reply (ECF No. 307).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, it is the opinion of the undersigned that Mendoza has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## BACKGROUND and PROCEDURAL HISTORY

On October 8, 2014, a grand jury returned a four-count indictment against John Matthew Love, Mabrye Joseph Bettinger, Bryant Anthony Kreis, Dusti Nicole Broxon, Anastacio Mendoza, and Carmen Theresa Silva (ECF No. 27). Count One of the Indictment charged that between July 1, 2014, and September 21, 2014, all six defendants conspired to possess with intent to distribute at least 50 grams or more of methamphetamine. Mendoza was not named in Counts Two through Four.

Previously, on September 21, 2014, Mendoza and co-defendant Silva were arrested in a sting that was part of an investigation into a large-scale methamphetamine trafficking operation. Law enforcement had covertly arranged for what was supposed to be a delivery of methamphetamine to cooperating co-defendant Love at a hotel in Dothan, Alabama. Mendoza and Silva were arrested after the vehicle Silva was driving pulled into the hotel parking lot near the room to which Love had directed them. More than 4.5 kilograms of what was later determined to be 97.5 percent pure d-methamphetamine hydrochloride were seized from the vehicle. Law enforcement also recovered two cell phones belonging to Mendoza, one of which had been used to coordinate the location of the methamphetamine delivery via text message.

Case Nos.: 5:14cr28/RH/EMT; 5:17cv285/RH/EMT

Mendoza was originally represented by Dustin Stephenson.   Less than a month before trial, Mendoza filed a motion for appointment of new counsel due to his dissatisfaction with counsel.   The court denied the motion after a hearing (ECF Nos. 150, 154).   After the Government moved for a continuance, Mendoza renewed his motion for appointment of new counsel.   The district court granted his motion and appointed Rachel Seaton-Virga to represent Mendoza on February 26, 2015, and continued the trial until May 11, 2015 (ECF Nos. 160, 175, 180, 181).

Mendoza, through Seaton-Virga, filed a motion to suppress tangible evidence, as well as observations made by law enforcement officers and any subsequent statements obtained from Mendoza pursuant to what he characterized as an unlawful stop (ECF No. 204).   The motion was denied after a hearing on May 7, 2015 (ECF Nos. 210, 211).   Mendoza then entered a guilty plea pursuant to a written plea agreement, factual basis, and supplement the same day, before then-Judge Richard Smoak (ECF Nos. 212–14, 268).

Although Mendoza pleaded guilty to a conspiracy, his Presentence Investigation Report ("PSR") held him accountable only for the methamphetamine recovered from the vehicle at the time of his arrest.   This yielded a base offense level of 38 (ECF No. 244, PSR ¶ 28).   His total offense level, after a three-level

reduction for acceptance of responsibility, was 35, and his criminal history category was III.    The applicable advisory guidelines range was 210 to 262 months' imprisonment.    The defense argued that a minor role reduction should be applied.

District Judge Robert Hinkle conducted sentencing on August 20, 2015 (ECF No. 265).    The Government moved to enter into an evidence a series of text messages between Mendoza and Silva.    It argued that the text messages suggested Mendoza was involved in recruiting Silva to participate in the delivery of the controlled substances.    The court admitted the exhibit, but nonetheless sustained the defense objection regarding the lack of a minor role adjustment.    Mendoza's revised guidelines range became 168 to 210 months' imprisonment.    Defense counsel urged the court to sentence Mendoza to less than 168 months and preferably the minimum mandatory of ten years, arguing that a guidelines sentence was greater than necessary to achieve the goals of § 3553.    She noted that the other defendants, many of whom had been engaged in sale and distribution of methamphetamine, had received significantly shorter sentences.    The court disagreed and imposed a sentence at the low end of the guideline range.    It explained that it had considered all the § 3553(a) factors and the sentence was sufficient, but not greater than necessary to achieve the statutory sentencing purposes (*id.* at 19).    The court stated

that although it had not specifically addressed all the § 3553(a) factors on the record, it would be willing to do so upon request (*id.* at 22).

Mendoza appealed the district court's denial of his motion to suppress (ECF No. 288).    The Eleventh Circuit affirmed.

Mendoza timely filed the instant motion, raising four claims of ineffective assistance of counsel.    The Government opposes the motion.

ANALYSIS

General Standard of Review

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."    *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014). Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.    *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).    "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury

that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697;

*Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted);

*Chandler*, 218 F.3d at 1315.    "[T]he fact that a particular defense ultimately proved to be unsuccessful [does not] demonstrate ineffectiveness."    *Chandler*, 218 F.3d at 1314.    When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect."    *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."    *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."    *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010).    A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."    *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).    Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability

that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203–04 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.* at 203.

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim. *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)). This is true regardless of whether the issue is a trial or sentencing issue. *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel); *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir.

2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).   Similarly, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.    *Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013); *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1311 (11th Cir. 2008); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (citation omitted).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."    *Chandler*, 218 F.3d at 1313.    This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).    "Even if counsel's

decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518

F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To

be entitled to a hearing, a defendant must allege facts that, if true, would prove he is

entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir.

2015).    A hearing is not required on frivolous claims, conclusory allegations

unsupported by specifics, or contentions that are wholly unsupported by the record.

*See Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014)

(explaining that "a district court need not hold a hearing if the allegations [in a

§ 2255 motion] are . . . based upon unsupported generalizations") (internal quotation

marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even

affidavits that amount to nothing more than conclusory allegations do not warrant a

hearing.    *Lynn*, 365 F.3d at 1239.    Finally, disputes involving purely legal issues

can be resolved by the court without a hearing.

Defendant's Claims for Relief

Ground One—Voluntariness of Plea

Mendoza first claims his plea was not knowing, voluntary and intelligent.

An allegation of a coerced plea, supported by a factual allegation, can support a

§ 2255 motion.    *See Fontaine v. United States*, 411 U.S. 213, 214–15 (1973);

*United States v. Lampaziane*, 251 F.3d 519, 524 (5th Cir. 2001).    However, a

defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the plea constitute a formidable barrier in any subsequent collateral proceedings.    *Blackledge v. Allison,* 431 U.S. 63, 73–74 (1977); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (citing *Blackledge*).    This is because solemn declarations made under oath in open court carry a strong presumption of verity.    *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin,* 767 F. 3d at 1216 (citing *Blackledge*).    Such statements are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice.    *Blackledge*, 431 U.S. at 73–74; *Winthrop-Redin*, 767 F.3d at 1216.    In fact, such allegations are subject to summary dismissal.    *Winthrop-Redin*, 767 F.3d at 1216 (citing *Blackledge*, 431 U.S. at 74).    A defendant "bears a heavy burden to show his statements [under oath] were false."    *Winthrop-Redin,* 767 F.3d at 1217 (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988)).    "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely."    *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)).

In this case, Mendoza's attacks on the voluntary, knowing, and intelligent nature of his plea are squarely refuted by his sworn testimony at the plea proceeding (ECF No. 268).   After he was sworn, the court advised Mendoza that if he did not answer questions truthfully at the proceeding, he could be charged with the separate crime of perjury.   The court also instructed him to ask questions if anything was not completely clear to him and advised him that he was free to talk to his lawyer at any time.

The first portion of Mendoza's argument appears to be a challenge to the fact of his guilt.   As he was informed at the plea proceeding, by pleading guilty, he waived his right to challenge his guilt and any defenses he might have, other than the court's denial of his motion to suppress (ECF No. 268 at 7–8.)   Furthermore, Mendoza agreed under oath that the facts set forth in the statement of facts were true (*id*. at 10).

Mendoza claims he received unspecified misadvice on the "true nature of the crime" (ECF No. 299 at 14).   This conclusory assertion does not establish his entitlement to relief.   The court explained the charges and the elements the Government needed to prove to secure a conviction, and Mendoza affirmed his understanding, under oath (ECF No. 268 at 9).

Last, Mendoza claims that he understood the plea agreement provided for a 120-month sentence. He states that it was not until sentencing that he learned otherwise, and had he known the Government was not bound to follow the terms of the deal he would not have pleaded guilty (ECF No. 299 at 15).

By way of background, Mendoza explains that after the court denied the suppression motion and counsel asked him how he wanted to proceed, he told defense counsel that "he would take a deal for ten years" (ECF No. 299 at 15). Counsel allegedly told him that the Government agreed, and Mendoza responded that once he spoke with his family, he would let her know if he would accept the ten years. Special Agent Lammers then entered the attorney-meeting room with two U.S. Marshals and a translator. Lammers gave Mendoza a cell phone for Mendoza to call his mother, after which Mendoza signed the plea agreement.

The rearraignment transcript contradicts Mendoza's statement about the sentence he expected to receive. The court explained that his potential sentence ranged from a minimum of ten years up to a maximum term of life, and that the court could not sentence him for *less than* ten years (ECF No. 268 at 10, 17). The court expressly warned Mendoza that if his sentence tuned out to be different than what his lawyer predicted, he would not be able to take back his guilty plea (*id.* at 12).

Mendoza assured the court that there were no secret or undisclosed promises that were not in the plea agreement and supplement thereto (neither document provides for a specific sentence, and Mendoza affirmed he had carefully read each document with his lawyer) (*id.*; *see also* ECF Nos. 213, 214).    Mendoza separately acknowledged that no one had made any promises to him other than what was contained in the plea agreement and supplement which caused him to plead guilty (ECF No. 268 at 13).    Both defense counsel and the Government also confirmed with the court that no "assurances, promises or understandings have been given to him about the deposition (sic) of his case that are any different" than what the court had outlined on the record.

There is simply nothing in the record supporting Mendoza's assertion that he agreed to a 120-month sentence in exchange for entering a plea.    To credit his position about the undisclosed sentencing promise would require a finding not only that Mendoza lied while under oath at the rearraignment proceeding, but also that two officers of the court made false statements during the proceedings.    He has not shown he is entitled to relief.

Ground Two—Consequences of Plea

Mendoza's second ground for relief[1] also focuses on his alleged belief that he would receive a sentence of ten years. His claim that counsel misinformed him about the consequences of the guilty plea and that he would receive a sentence of at least ten years is refuted by the record, as thoroughly discussed in the previous section. He has not shown counsel was constitutionally ineffective, and he is not entitled to relief.

<u>Ground Three—Ineffectiveness of Appellate Counsel</u>

Mendoza was represented both at the trial and appellate level by the same attorney. His third claim for relief, although framed as an ineffective assistance of appellate counsel, encompasses matters at both the trial and appellate levels.

Mendoza faults counsel for inadequately advising him of "the legal effect of abandoning any non-suppression issue on appeal" (ECF No. 299 at 20). For instance, he complains counsel did not advise him that failure to appeal an issue would mean the issue could not be presented again in the future, "even if a favorable, retroactively-applicable Supreme Court decision were announced" (ECF No. 299 at 20). Even if such a failing were constitutionally deficient, Mendoza does not

---

[1] Pages 16 and 17 of Mendoza's motion appear to be an "unfinished" version of Ground Two. His full argument on Ground Two is contained on pages 18 and 19.

Case Nos.: 5:14cr28/RH/EMT; 5:17cv285/RH/EMT

explain how he was prejudiced.   Absent a showing of prejudice, he has not shown a violation of the standards enunciated in *Strickland.*

Mendoza also complains that counsel did not tell him that failure to challenge any factual errors in the PSR "essentially wrote the facts in stone" (ECF No. 299 at 20).   He does not explain what facts he would have challenged had counsel provided this advice, or how this would have impacted his sentence, and again, he has not shown prejudice.

Ground Four—Sentencing Procedure

Mendoza's fourth ground for relief encompasses an argument that was also part of Ground Three of his motion.   He contends that the district court did not follow the "required analytic framework" in fashioning his sentence, specifically in determining relevant conduct, the scope of the jointly-undertaken criminal activity, and what part of that activity was reasonably foreseeable to him (ECF No. 299 at 20, 21).   He maintains if the court had undertaken the proper analysis, the court would have rejected the plea because "the factual basis for the plea would evaporate." Further, he asserts that the "sentenceable [sic] drug weight," even under a preponderance standard, was a weight less than what was needed to trigger the ten-year minimum.   Although sentencing error alone is not a proper ground for a § 2255

motion, Mendoza contends counsel was ineffective for not raising this "procedural" issue on appeal.    His claim fails, as he can show neither deficient performance nor prejudice.

First, Mendoza's foreseeability argument is misplaced.    Although he pleaded guilty to conspiracy, the only drugs attributed to him for the purpose of sentencing were the 4.617 kilograms of methamphetamine he and Silva were transporting at the time of his arrest.    He was not held accountable for any other activity that was part of the wider conspiracy.    Additionally, his reference to a question about when he joined the conspiracy is likewise irrelevant considering the limited scope of his accountability (ECF No. 307 at 4).    To the extent he invokes § 3553(a) and claims the court did not comport with the statute, as noted above, the court stated at sentencing that it had considered the 3553(a) factors.

Mendoza has not identified any meritorious argument counsel could have pursued on appeal that would have impacted his mandatory minimum sentence, his guideline range, or the court's ultimate sentence.    Counsel is not constitutionally ineffective for failing to preserve or argue a meritless claim, whether before the trial court or on appeal.    *Freeman*, 536 F. 3d at 1233; *Brown*, 720 F. 3d at 1335; *Shere,* 537 F. 3d at 1311; *Nyhuis*, 211 F. 3d at 1344.

Conclusion

An evidentiary hearing is not necessary for this court to resolve Mendoza's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015).

Additionally, for all of the foregoing reasons, the court finds that Mendoza has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.    Therefore the § 2255 motion should be denied in its entirety.

Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."    A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.    Rule 11(b), Rules Governing Section 2255 Cases.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.    § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."    If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 299) be **DENIED**.

2.    A certificate of appealability be **DENIED**.

At Pensacola, Florida, this <u>14</u>th day of April 2020.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.